UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    KEVIN W. KULEK,                            Case No. 16-21030-dob
         Debtor.                                 Chapter 7 Proceeding
                                                   Hon. Daniel S. Opperman
_____/

RANDALL L. FRANK,
         Plaintiff,

v.                                                   Adversary Proceeding
                                                    Case No. 17-2001-dob

TIMOTHY J. FIFE,
         Defendant.
_____/

OPINION GRANTING
<u>MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, TIMOTHY FIFE</u>

<u>Introduction</u>

      The Chapter 7 Trustee, Randall Frank, started this lawsuit against Defendant, Timothy Fife, seeking the return of two pinball machines. The Defendant filed a Motion for Summary Judgment arguing that the Plaintiff cannot maintain a cause of action against him because he purchased these pinball machines from a third party. For the reasons stated in this Opinion, the Court grants the Defendant's Motion for Summary Judgment.

<u>Findings of Fact</u>

      The Debtor, Kevin Kulek, is a pinball aficionado and has built, sold, and traded pinball machines for much of his life. Two such machines are in issue. The first is a Predator Pinball Machine ("Predator Game") and is based upon the Predator movie series. This machine is completed and generally functionable. The second machine is the Experts of Dangerous ("EOD

1

Cabinet") and is based upon the television series Myth Busters. This machine is merely a cabinet and does not contain any game parts and is not functional. While both machines are apparently innovative, the Debtor failed to procure the necessary rights to use the names associated with either pinball machine.

Each pinball machine was transferred by the Debtor to Micheal Magyari, but each are now possessed by the Defendant. At his first meeting of creditors, the Debtor stated that he loaned these two machines to either Mr. Magyari or the Defendant. In support of his Motion for Summary Judgment the Defendant filed two affidavits, each supported with documents. The first affidavit is that of Mr. Magyari in which he states that he traded six other games to the Debtor for the Predator Game in 2015 and then paid $1,200 to the Debtor for the EOD Cabinet in November 2015. The second is the Defendant's affidavit in which the Defendant states that he purchased the Predator Game from Mr. Magyari for $8,000 and includes bank documents reflecting withdrawals which he claims he gave to Mr. Magyari. Also, the Defendant's affidavit states that he traded one of his games for the EOD Cabinet and includes a series of text messages between himself and Mr. Magyari reflecting that fact, as well as Mr. Magyari's statements that he obtained the EOD Cabinet a long time ago and needed to get the cabinet off of his hands.

After the Defendant filed his Motion for Summary Judgment, the Plaintiff filed a Response and attached affidavits of Plaintiff's counsel attesting to facts as he understood them. The Plaintiff has not produced an affidavit or sworn testimony supporting the Debtor's first meeting of creditor statements. Subsequently, the Plaintiff amended his Complaint to include Mr. Magyari because it became apparent in any factual situation that the Defendant is not the initial transferee of either the Predator Game or the EOD Cabinet.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Statement of Authorities

### Motion for Summary Judgment

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Rule 56 provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden then shifts to the non-moving party once the moving party has met its burden, and the non-moving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

Since the Plaintiff seeks relief from a transferee of the pinball machines, 11 U.S.C. § 550 applies. The pertinent provisions of this statute state:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from —
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

## Analysis

Perhaps belatedly, the Plaintiff realized that the two pinball machines in question were not transferred directly by the Debtor to the Defendant. Instead, the uncontroverted affidavits filed in this case show that Mr. Magyari traded six games to the Debtor for the Predator Game and paid $1,200 for the EOD Cabinet. When the Motion was filed, Mr. Magyari was not a named party in this lawsuit.[1] Initially, the Plaintiff's claims against the Defendant are premature as the Plaintiff must show that the transfer from the Debtor to Mr. Magyari may be avoided either under 11 U.S.C. § 544, 11 U.S.C. § 548, or MCL 566.34. *Suhar v. Burns*, 322 F.3d 421, 427-28 (6th Cir. 2003).

While the Plaintiff is correct that Section 550(a)(2) allows for recovery from any immediate or mediate transferee of such initial transferee thus making his claims against the Defendant viable, the predicate for Section 550 relief is the avoidance of the initial transfer. That has not been proven here and at this stage cannot be proven.

The uncontroverted affidavits of individuals with actual knowledge also show that the Defendant paid Mr. Magyari $8,000 for the Predator Game and traded a functional game for the EOD Cabinet. There is no evidence before the Court to suggest that these payments and transfers were insufficient, thus establishing a prima facie defense for the Defendant that he was a good faith purchaser.

Despite these affidavits, the Plaintiff contests the issue of whether the Defendant is a good faith purchaser. Specifically, the Plaintiff claims that since both the Predator Game and the EOD Cabinet lack the necessary licenses, then the Defendant must have known that the games were problematic, therefore destroying his good faith status. At oral argument, counsel for the Plaintiff

---

[1] A Motion for Leave to Amend Complaint to add Mr. Magyari as a party Defendant is currently pending.

indicated that the Debtor lacked a license to manufacture the Predator Game or the EOD Cabinet. It was also posited that by inference the Debtor had no legal right to either the Predator Game or the EOD Cabinet and, therefore, could not sell either game.

The Plaintiff's argument has flaws and raises more serious questions for the Plaintiff. First, for purposes of this Motion only, assuming that the Debtor did not have title to the Predator Game or the EOD Cabinet, that property could never be estate property because the Debtor did not have an interest in it when it was transferred. *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 931 (6th Cir. 2000). In *Kitchen*, the property in question was either embezzled or stolen and did not become estate property, so the Trustee could not pursue this property. The same holds true here. If the Debtor had no legal right to either the Predator Game or the EOD Cabinet, the Trustee cannot pursue these items. Also, it is not clear what the Plaintiff would do with either item if he ever recovers either item.

Second, the test for good faith is a subjective one that focuses on the particular situation. *See, e.g., Meoli v. Huntington Nat'l Bank (In re Teleservices Grp.)*, 444 B.R. 767, 816 (Bankr. W.D. Mich. 2011). In this case, there is scant evidence that either the Predator Game or the EOD Cabinet lacked a license and there is no evidence that the Defendant was aware of this problem. Also, there is no evidence that Mr. Magyari was aware of the lack of licenses, if that is indeed the case. Even assuming arguendo that the Defendant or Mr. Magyari was aware that each game lacked a license, the nexus between this fact and the fraudulent intent of the Debtor or, for that matter, Mr. Magyari, is still not shown. Instead, the facts as set forth in the uncontroverted affidavits to date show that the Defendant relied upon Mr. Magyari in his transaction with Mr. Magyari and was not aware of any issues raised by the Plaintiff when the transfers of the two machines occurred.

If the Court were to adopt the Trustee's view of this case, questions arise as to whether the

Plaintiff, as the Trustee for the Debtor, has any right to either game or a remedy. For example, if either game was held illegally by the Debtor, what damage has the bankruptcy estate incurred if neither game may be sold or transferred for consideration? Also, it is not clear with this record, assuming that the Plaintiff's assertions are correct, whether the Plaintiff is the proper party to recover the two games. Finally, what is the value of either game if neither can be sold?

All that aside, the record before this Court shows that the Defendant paid $8,000 for the Predator Game, traded a game for an inoperative EOD Cabinet, and did not have knowledge of the Debtor's intent to defraud creditors. Also, the Defendant is not the immediate transferee from the Debtor. There is no genuine issue of material fact in this case in that the Defendant has met his burden of proof such that he is entitled to summary judgment. After this conclusion, since the Plaintiff has not countered by showing that a genuine issue of material fact exists, the Defendant is entitled to the relief he requests. For all of these reasons, the Motion for Summary Judgment of the Defendant is granted.

**Not for Publication**

**Signed on November 27, 2017**

/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**